**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LUIS FERNANDO REGALADO-NAUTA,**<br>**Petitioner,**<br><br>**v.**<br><br>**J.L. JAMISON, JOHN E. RIFE, MARKWAYNE MULLIN, and U.S. DEPARTMENT OF HOMELAND SECURITY,**<br>**Respondents.** | **CIVIL ACTION**<br><br><br><br>**NO. 26-cv-6834** |

## MEMORANDUM OPINION

This matter arises on the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 of Petitioner Luis Fernando Regalado-Nauta ("Regalado-Nauta"). Notably, this Petition is the first before this Court following the Third Circuit's recent ruling in *Buele Morocho v. Warden Philadelphia FDC*, — F.4th —, 2026 WL 2546223 (3d Cir. Aug. 28, 2026). The record now evidences the government's new strategies in light of their loss on appeal—to assert discretionary grounds for detention of persons living in the United States where the mandatory grounds are no longer an option. And so, the Government's game of whack-a-mole continues, and once again the judicial gavel must strike.[1]

Regalado-Nauta argues that his detention is unlawful in violation of his rights under the Due Process Clause of the United States Constitution.[2] For the reasons that follow, his Petition shall be granted.

[1] For a digest of the Government's initial attempts to contravene the weight of the law prior to the Third Circuit's clarification of 8 U.S.C. § 1225(b)(2)(A), *see Rios Porras v. O'Neill*, 2025 WL 3708900, at *2-3 (E.D. Pa. Dec. 22, 2025).

[2] In addition to his first and second claims for relief on constitutional grounds, Regalado-Nauta also raised two additional grounds for relief under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Because the Court grants relief to Regalado-Nauta as requested on Due Process grounds, it declines to reach his other stated bases for relief. *See Gomez v. Soto*, 2026 WL 2117633, at *3 n.3 (D.N.J. July 22, 2026) (declining to reach Petitioner's alternative grounds for relief and ordering petitioner's immediate release).

## I. FACTUAL BACKGROUND

Regalado-Nauta is a 37-year-old citizen of Ecuador who challenges his present immigration detention. He entered the United States in June 2022. Shortly after entering the country, he was detained and processed by the Department of Homeland Security ("DHS"). He was then released from immigration detention in 2022 to live in Philadelphia, Pennsylvania, and following his initial detention, was required to—and did—attend periodic check-ins.

On September 8, 2026, Regalado-Nauta appeared for a routine check-in at the Philadelphia field office of DHS, as he had done regularly before. There, DHS officials detained him and took him into custody with no prior notice or opportunity to contest his detention. That same day, Immigration and Customs Enforcement ("ICE") executed and served on Regalado-Nauta a Form I-286, Notice of Custody Determination, informing him of ICE's decision to detain him during the remainder of his removal proceedings. Since then, Regalado-Nauta has been detained at the Philadelphia Federal Detention Center.

Regalado-Nauta has not been placed into immigration court proceedings, nor has he ever been charged with or convicted of a crime.

## II. DISCUSSION

### A. Regalado-Nauta's Detention Is Not Authorized Under 8 U.S.C. § 1225(b)(2)(A).

The first matter to address is to address whether the application of mandatory detention under 8 U.S.C. § 1225(b) provides a legal justification for Regalado-Nauta's present detention. It does not.

Section 1225(b)(2)(A) requires detention of an alien who is an applicant for admission determined not clearly and beyond a doubt entitled to admission to the United States. 8 U.S.C. § 1225(b)(2)(A). Less than two weeks prior to Regalado-Nauta's detention, the Third Circuit

ruled that while 8 U.S.C. § 1225 applies to noncitizens arriving at the borders, it does not apply to noncitizens already in the United States. *Buele Morocho*, 2026 WL 2546223, at *5, *7. Dissecting the statute, the Third Circuit held that Section 1225(b)(2)(A) "imposes mandatory detention if: (1) an 'examining immigration officer,' (2) determines that an 'applicant for admission,' (3) is 'an alien seeking admission,' and (4) is 'not clearly and beyond a doubt entitled to be admitted.'" *Id.* at *2. Not only must a petitioner be an "applicant for admission," but a petitioner "must also be 'an alien seeking admission,'" *id.* at *3, to be subject to § 1225(b)(2)(A). Examining the various canons of statutory interpretation, the Third Circuit clarified that, to be subject to § 1225(b)(2)(A), an "applicant for admission" must "engage in an ongoing affirmative act to 'seek[ ] admission' to the United States."[3] *Id.* at *4. The "ordinary meaning" of the statute is that "seeking admission" requires that "an 'applicant for admission' must engage in present or ongoing action to gain 'admission,' that is, lawful entry . . . into the United States after inspection and authorization by an immigration officer."[4] *Id.* at *3 (citing 8 U.S.C § 1101(a)(13)(A)).

Like the petitioners in *Buele Morocho*, Regalado-Nauta is not engaged in any ongoing acts to gain admission to the United States. He has been here for more than four years. His

---

[3] As Petitioner notes, the Third Circuit joined the ranks of the Courts of Appeals for the First, Second, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits in adopting similar interpretations of § 1225 and determining that mandatory detention of similarly situated petitioners under § 1225(b)(2)(A) is unlawful. *See Buele Morocho*, 2026 WL 2546223, at *2 (and cases cited therein).

[4] The Third Circuit's ruling validates this Court's decisions in similar cases to that of Petitioner, where the parties made nearly identical arguments. In those cases, this Court held that detaining individuals in Regalado-Nauta's position without a bond hearing violates the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq. See, e.g.*, *Rio Porras v. O'Neill*, 2025 WL 3708900 at *2-3 (E.D. Pa. Dec. 22, 2025) (citing *Ndiaye v. Jamison*, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025); *Karashnov v. Jamison*, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025); and *Demirel v. Fed. Det. Ctr. Phila.*, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025)). This Court has consistently rejected the Government's argument that noncitizens like Petitioner are persons "seeking admission" and therefore detainable under § 1225(b)(2)(A). *See, e.g.*, *Peixoto v. Jamison*, 2:26-cv-967, Dkt. No. 5, n.i (E.D. Pa. Feb. 20, 2026); *Castaneda Salinas v. Jamison, et al.*, 2:26-cv-1345, Dkt. No. 7, n.1 (E.D. Pa. Mar. 5, 2026); *Tukhtaev v. Jamison*, 2:26-cv-01969, Dkt. No. 8, n.i (E.D. Pa. Mar. 31, 2026). The same reasoning applies here.

present detention was not precipitated by any acts to seek admission to the United States. Rather, he was detained following compliance with the requirement to periodically check in with ICE. Regalado-Nauta was initially detained and processed shortly after entering the country, but an immigration office determined he posed no risk of danger nor flight to warrant continued detention. Accordingly, his detention is governed by 8 U.S.C. § 1226, which "governs those already within our borders." *Buele Morocho*, 2026 WL 2546223, at *5. Since Regalado-Nauta's detention is governed by § 1226, any mandatory detention under § 1225 is unlawful. *See Gomez v. Jamison et al.*, 2026 WL 2664887 (E.D. Pa. Sept. 10, 2026) (concluding the same based on similar facts and analysis under *Buele Morocho*).

**B. Regalado-Nauta's Detention Is Not Authorized Under 8 U.S.C. § 1226.**

The next consideration is whether Regalado-Nauta's discretionary detention under 8 U.S.C. § 1226, as Respondents contend, is lawful. That statute provides that "on a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226 applies to aliens already present in the United States. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226(a) provides a framework for the arrest and detention of certain noncitizens pending a decision concerning removal. *Gomez v. Mullin*, 2026 WL 2690202, at *2 (D.N.J. Sept. 14, 2026).

Detention under Section 1226(a) is discretionary. *Khan v. Lowe*, 2026 WL 1459902, at *5 (M.D. Pa. Feb. 6, 2026). The statute's implementing regulations establish a framework for initial custody determinations and subsequent review by an immigration judge and the Board of Immigration Appeals ("BIA"). *See* 8 C.F.R. § 1236.1(c); 8 C.F.R. § 1236.1(d)(1) ("After an initial custody determination by the district director . . . the respondent may . . . request

amelioration of the conditions [by application to an immigration judge]."). "When the Government detains an alien under Section 1226, the alien has due process rights, including a right to an individualized detention determination and a bond hearing." *Kashranov v. Jamison*, 2025 WL 3188399, at *5 (E.D. Pa. Nov. 14, 2025) (citing 8 C.F.R. § 1236.1(c)(8), (d)). The initial custody determination requires "an individualized determination as to . . . whether the noncitizen is a 'danger to property or persons' and is 'likely to appear for any future proceeding.'" *Lopez Benitez v. Francis*, 795 F. Supp.3d 475, 492-93 (S.D.N.Y. Aug. 13, 2025); *see also Vasquez Trejos v. Green*, 2017 WL 11930846, at *2 (D.N.J. Aug. 31, 2017) ("[A]liens detained pursuant to 8 U.S.C. § 1226(a)'s discretionary detention provision are entitled to an individualized bond determination.") (citing *Contant v. Holder*, 352 F. App'x 692, 695-96 (3d Cir. 2009)).

The Government has made no such individualized determination with respect to Regalado-Nauta. The circumstances of Regalado-Nauta's detention resemble those addressed recently by Judge Sánchez in *Dos Reis v. McShane*, 2026 WL 1746649, at *4-5 (E.D. Pa. June 17, 2026). There, the petitioner was detained under Section 1226(a), so "ICE had discretion to detain him or release him on bond or conditional parole, but it had to exercise that discretion through an individualized custody determination." *Id.* at *4. There, as here, the record was "bereft of a reasoned finding that Petitioner is dangerous or a flight risk, or unsuitable for conditions short of detention."[5] *Id.* Further, the Form I-286 at issue in *Dos Reis* merely

[5] Although Respondents purport that Regalado-Nauta was detained under Section 1226(a), none of the typical indicia of lawful detention under Section 1226(a) are present. *See, e.g., Gomez*, 2026 WL 2690202, at *3, *3 n.4 (determining that a petitioner's detention under Section 1226(a) was unlawful where the record failed to "identify a final order of removal or a criminal basis for mandatory detention," or demonstrate that the petitioner was "served with a new charging document, placed in a new removal proceeding, subjected to a § 1226(a) custody determination, or afforded an opportunity for release on bond."). Regalado-Nauta's circumstances are similar—evidencing that the required individualized custody determination was not made here.

reflected that the petitioner was "Detained" and provided "no explanation or reasoning as to why the authorizing officer made that determination." *Id.* The same is true here. DHS has not made an individualized custody determination with respect to Regalado-Nauta.[6] "A decision driven by a general executive directive, without a reasoned assessment of Petitioner's particular risk of flight or danger . . . does not comply with § 1226(a)." *Id.*; *see also id.* (collecting cases granting petitions and ordering immediate release). Because Regalado-Nauta has not been afforded an individualized custody determination, his detention under 8 U.S.C. § 1226(a) is unlawful.

**C. Continued Detention Stands to Violate Regalado-Nauta's Due Process Rights, So Regalado-Nauta Must Be Immediately Released.**

Regalado-Nauta's continued detention violates his constitutional Due Process rights. Generally, detention of noncitizens who have lived in the United States risks violating the Due Process Clause of the United States Constitution. The "Due Process Clause applies to all '***persons***' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (emphasis added). "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Id.* at 690. Regardless of whether Regalado-Nauta was detained pursuant to Section 1225(b)(2)(A) or Section 1226(a), the fact remains that he has been detained without adequate process.

Due process in the civil immigration detention context requires procedures that are reasonably calculated to avoid erroneous deprivation of liberty. *See Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 331-32 (3d

[6] Respondent points to *Demore v. Kim*, 538 U.S. 510, 523-31 (2003) for the proposition that the absence of individualized bond hearings does not support a due process challenge. Notably, though, *Demore* involved a detained noncitizen who had been convicted of first-degree burglary, among other crimes. *Id.* at 513. Regalado-Nauta's lack of criminal charges or convictions distinguishes his case and presents the need for ICE to demonstrate an individualized determination as to why *he* should be kept in custody.

Cir. 2021) (applying Mathews to civil immigration detention context). Relying on the factors outlined in *Mathews*, the Third Circuit in *Buele Morocho* ruled that detention without bond of noncitizens who have lived in the United States for extended periods of time with no criminal records violates due process. *Buele Morocho*, 2026 WL 2546223, at *9. The *Mathews* factors weigh (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and, (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. The balance of factors weighs in favor of Regalado-Nauta and counsels his release.

*First*, Regalado-Nauta has a critical interest in maintaining his personal liberty free from mandatory detention for an indeterminate amount of time. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *see also Andrade v. Rose*, 2026 WL 401189, at *6 (E.D. Pa. Feb. 12, 2026) (finding that a petitioner "has a strong liberty interest in being free from mandatory detention"); *see also Rodrigues v. Jamison*, 2026 WL 676468, at *5 (E.D. Pa. Mar. 10, 2026) (same). "The restriction of liberty is particularly acute here where, absent a bond hearing, he would be detained for months or even years while his case proceeds." *Cunin v. McShane*, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025). Respondents concede that Regalado-Nauta has a liberty interest in being free from detention. It matters not that Regalado-Nauta has been detained for six days (or six years, or six minutes)—the fact is that Regalado-Nauta has been deprived of his personal liberty, and he has a private interest that would be deeply affected by continued detention.

*Second*, Regalado-Nauta's detention risks erroneously depriving him of his rights because has not yet been provided an opportunity for a neutral decisionmaker to make an individualized determination as to whether Regalado-Nauta poses a flight risk or a danger to the community. *See Buele Morocho*, 2026 WL 2546223, at *9 ("[T]he absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous . . . or flight risks . . . presents a high risk of erroneously depriving Petitioners of their liberty interest."); *see also Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958) ("Physical detention of aliens . . . is generally employed only as to security risks or those likely to abscond."). The record lacks any indication that an individualized determination as to Regalado-Nauta's risk has been made, let alone that such a determination would result in a finding that he is likely to abscond from bond proceedings. The probable value of additional procedural safeguards is high. An individualized custody determination and a rationale for detention would require DHS to explain why this Regalado-Nauta ought to be detained. Regalado-Nauta has regularly attended check-ins with ICE. His lack of criminal record suggests that he poses no known danger to the community. Based on the record before the Court, reflecting no criminal history for Regalado-Nauta nor risk of flight, the second *Mathews* factor favors Regalado-Nauta.

*Third*, while the Government has a legitimate interest in preventing the release of dangerous noncitizens and those who fail to appear at future hearings, *see Buele Morocho*, 2026 WL 2546223, at *10 (citing *Zadvydas*, 533 U.S. at 690)), that interest is not outweighed by the balance of the first and second *Mathews* factors. Regalado-Nauta, like the petitioners in *Buele Morocho*, is a "non-criminal individual[ ] [who was] detained absent evidence that [he] is dangerous or a flight risk." *Id.* at *10. Regalado-Nauta presents no risk of failing to appear at

future hearings. Indeed, he has regularly reported to ICE check-ins since his initial detention in 2022.

The *Mathews* factors counsel Regalado-Nauta's release. *Cf. Gomez*, 2026 WL 2664887, at *4 n.4 (declining to order immediate release due to petitioner's prior guilty plea to several traffic-related offenses). Regalado-Nauta has never been charged with or convicted of a crime. *Cf. Cortez Barreto v. Mullin*, 2026 WL 2676925, at *1 (E.D. Pa. Sept. 11, 2026) (declining to order immediate release given petitioner's recent criminal charges). Further, Regalado-Nauta poses no flight risk. He has regularly reported for check-ins with ICE. Indeed, an immigration official determined that Regalado-Nauta was not a flight risk or danger to the community. As a result, immediate release is the only appropriate remedy. *See Munaf v. Green*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful executive] detention is, of course, release.").

## III. CONCLUSION

For the foregoing reasons, Regalado-Nauta's Petition for a Writ of Habeas Corpus is granted. His detention without process contravenes the Due Process Clause of the Fifth Amendment, so he shall be immediately released. Thus strikes the judicial gavel once more to whack the persistently protean mole presented by the Government's Response.

An appropriate Order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

**WENDY BEETLESTONE, C.J.**